UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLY STINER,<br><br>     Petitioner,<br><br> v.<br><br>ANDREW SAUL,[1]<br>Commissioner of Social Security<br>Administration,<br><br>     Respondent. | Case No. 1:18-cv-00370-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

This action appeals the Social Security Administration's denial of an application

for supplemental security income ("SSI") filed by Kelly Stiner on behalf of her daughter,

E.B., a minor under age 18.[2] The Court has jurisdiction to decide Petitioner's appeal

pursuant to 42 U.S.C. § 405(g). Both parties have consented to the exercise of United

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be
substituted for Acting Commissioner Nancy A. Berryhill as the Respondent in this suit. No
further action needs to be taken to continue this suit by reason of the last sentence of section
205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] Ms. Stiner will be referred to as the Petitioner, while her daughter will be referred to as
the Claimant.

States Magistrate Judge jurisdiction. (Dkt. 14.) After reviewing the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, the Court will remand the decision of the Commissioner for further proceedings.

## SEQUENTIAL PROCESS

A child is disabled for the purpose of receiving SSI benefits if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To decide if a child is entitled to disability benefits, an ALJ conducts a three-step sequential evaluation. 20 C.F.R. § 416.924(a). In the first step, the ALJ determines whether the child engaged in substantial gainful activity during the alleged disability period. 20 C.F.R. § 416.924(b). If the child has been engaged in substantial gainful activity, the analysis ends and disability benefits are denied. *Id*. Otherwise, the ALJ proceeds to the second step.

At step two, the ALJ determines whether the child has a severe medically determinable impairment or combination of impairments. 20 C.F.R. § 416.924(c). If there are no such impairments, the disability claim is denied. *Id*. If there are such impairments, the ALJ proceeds to the third step.

In the third and final step of the analysis, the ALJ determines whether the child's impairment meets, or medically or functionally equals, an impairment in the Listing of

Impairments, 20 C.F.R. § 404, Subpart P, App. 1. If the impairment either meets or equals a listed impairment, it is presumed to cause "marked and severe functional limitations." 20 C.F.R. § 416.924(d). If the impairment has lasted or can be expected to last for at least twelve months, then the child is deemed disabled and awarded benefits.

If the impairment does not meet a listed impairment, the ALJ must assess functional equivalency to a listed impairment. In determining whether an impairment or combination of impairments is functionally equivalent to a listed impairment, the ALJ must assess the child's functioning in terms of six domains, and determine the child's ability: (1) to acquire and use information; (2) to attend and complete tasks; (3) to interact and relate with others; (4) to move about and manipulate objects; (5) to care for oneself, and (6) to attend to her health and physical well-being. 20 C.F.R. § 416.926a(a)-(b). To demonstrate functional equivalence, the child must exhibit a marked limitation in two of the domains, or an extreme limitation in one domain. 20 C.F.R. § 416.926a(e)(2)(i). A "marked limitation" is one that "seriously interferes with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). By contrast, an "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the Claimant's inability "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

# PROCEDURAL AND FACTUAL HISTORY

Claimant is a minor child born in 2007. (AR 18.) On August 18, 2014, her mother, Kelly Stiner, applied for SSI benefits on Claimant's behalf. (AR 15, 249.) The application alleged that, on August 23, 2011, Claimant became disabled due to major anxiety disorder; acid reflux; migraines; stomach problems; behavioral problems (trichotillomania);[3] a learning disorder; and attention-deficit/hyperactivity disorder (ADHD). (AR 222.) The claim was denied initially on March 12, 2015, and upon reconsideration. Petitioner timely filed a request for a hearing on July 28, 2015. On August 30, 2017, ALJ Richard Opp held a video hearing.[4] Petitioner and Perry Grossman, M.D., an impartial medical expert, testified at the hearing. Petitioner was represented by counsel. On September 8, 2017, the ALJ found Claimant not disabled. (AR 15-28.)

Petitioner timely requested review by the Appeals Council, which denied her request for review on July 20, 2018. Petitioner appealed this final decision to the Court on August 22, 2018. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

The ALJ determined that Claimant has not engaged in substantial gainful activity since August 18, 2014, the application date. (AR 18). The ALJ found that Claimant has the following severe impairments: anxiety disorder, trichotillomania, ADHD, and

---

[3] Trichotillomania is an impulse control disorder characterized by a compulsion to pull out one's own hair. 938590 trichotillomania, STEDMANS MEDICAL DICTIONARY 938590.

[4] At the time of the hearing, Claimant was ten years of age.

migraines. (*Id.*) The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (AR 18-28). With regard to functional equivalence, the ALJ concluded Claimant does not have an extreme limitation in any domain of functioning or a marked limitation in two domains. Accordingly, the ALJ determined that Claimant has not been disabled since the application date of August 18, 2014. (AR 28).

In challenging the ALJ's decision, Petitioner presents three issues for review: (1) the ALJ erred in his evaluation of Listing 112.06; (2) the ALJ erred in his analysis of the six functional domains; and, (3) the ALJ erred when he determined Petitioner's testimony was not consistent with the record. Each issue will be discussed in turn below.

## DISCUSSION

### 1. Whether Claimant Met Listing 112.06

To meet Listing 112.06 Anxiety and Obsessive-Compulsive Disorders, for children age three to attainment of age eighteen, a claimant must meet the criteria set forth in Paragraphs A and B, or A and C. 20 C.F.R. § 404, Subpt. P, App. 1 § 112.06. The ALJ did not analyze whether Claimant met the Paragraph A criteria,[5] focusing instead

---

[5] Paragraph A(1) specifies a claimant must have medical documentation of anxiety disorder characterized by one or more of the following: (a) restlessness; (b) easily fatigues; (c) difficulty concentrating; (d) irritability; (e) muscle tension; ore (f) sleep disturbance. The parties do not appear to dispute Claimant meets the paragraph A criteria, considering her multiple mental health diagnoses of ADHD, anxiety disorder, and trichotillomania, which the ALJ found to be severe.

upon whether Claimant met either the Paragraph B or Paragraph C criteria. (AR 18-19.)

To meet the paragraph B criteria, a claimant must exhibit an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. A marked limitation means that the claimant's impairment "interferes seriously with [her] ability to independently initiate, sustain, or complete activities," while an extreme limitation means that the claimant's impairment "interferes very seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2), (3).

Section 1382c(a)(3)(I) of the Social Security Act provides:

> In making any determination under this title...with respect to the disability of an individual who has not attained the age of 18 years..., the Commissioner of Social Security shall make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual (as determined by the Commissioner of Social Security) evaluates the case of such individual.

42 U.S.C. 1382c(a)(3)(I).

The ALJ obtained an evaluation of the record from Dr. Perry Grossman, a pediatrician, who testified at the hearing. Dr. Grossman is board certified in Pediatrics with a subspecialty in developmental pediatrics. (AR 471, 41 – 42.) He reviewed the entirety of the Claimant's medical and school records, with the exception of Exhibit 20E,

an Individualized Education Plan (IEP) Progress report dated April 25, 2017.[6] (AR 37, 42.)

Dr. Grossman opined that Claimant exhibited a "less than marked" limitation in adapting or managing herself. (AR 39 – 40.) In summarizing the medical and other records he reviewed to make that determination, Dr. Grossman indicated that, in his opinion, Claimant has some difficulties with trichotillomania when stressed, but had not exhibited any particular behavior problems at school and she was able to manage her hygiene and self-care. (AR 39 – 40.)

Based largely on the testimony of Dr. Grossman, the ALJ determined that Claimant had a less than marked limitation in all four areas of mental functioning in paragraph B of Listing 112.06. (AR 18-19.) When addressing Claimant's ability to adapt or manage herself, the ALJ noted also that, in Claimant's function report, Petitioner indicated her daughter had no problem with helping herself and cooperating with others in taking care of personal needs. (AR 19, 215.) The ALJ relied also upon the report of Claimant's teacher, who reported no problems with Claimant's ability to adapt and

---

[6] Petitioner mentions Dr. Grossman's failure to consider Exhibit 20E, but does not explain why the failure to consider Exhibit 20E undermines Dr. Grossman's testimony with respect to whether Claimant met a listed impairment. Pet. Brief at 9. (Dkt. 15.) Exhibit 20E indicates "progress made" toward the goals set by the IEP team in the areas of reading and math. (AR 327 – 345.) In his written determination, the ALJ mentioned that Exhibit 20E, which was Claimant's most recent IEP progress report, noted "improved focus and learning under current medication." (AR 19.)

manage herself. (AR 19, 238.)[7] And, in addition to mentioning that Claimant's most recent IEP evaluation dated April 25, 2017, documented improvements, the ALJ pointed out that Claimant's health care providers generally observed appropriate grooming and hygiene. (AR 19.)

Petitioner asserts the ALJ erred for two reasons: (1) Dr. Grossman, who is not a psychologist, is not qualified to render an opinion; and, (2) there is not substantial evidence to support Dr. Grossman's opinion (and the ALJ's finding) that Claimant had a less than marked limitation in adapting or managing herself.[8] Petitioner argues that Claimant's severe anxiety, manifesting itself in tantrums, vomiting, suicidal ideation, and trichotillomania, coupled with her learning difficulties, constitutes an "extreme" limitation in Claimant's ability to adapt or manage oneself. Pet. Brief at 8-10. (Dkt. 15.)

First, the Court finds the ALJ did not err in relying upon the opinions of Dr. Grossman, a board certified pediatrician, in fulfilling his obligations under 42 U.S.C. § 1382c(a)(3)(I) with respect to evaluating whether Claimant meets the requirements of Listing 112.06. The statute specifies that an evaluation by *either* a qualified pediatrician *or* other individual who specializes in a field of medicine appropriate to the child's

---

[7] Claimant's second grade teacher completed the teacher questionnaire on February 25, 2015. (AR 240.) The teacher indicated she had known Claimant for five months, and had occasion to interact with Claimant every school day for six hours each day. (AR 233.)

[8] Respondent argues the ALJ's conclusions in the other three areas of mental functioning listed in Paragraph B of Listing 112.06 also were supported by substantial evidence. Petitioner did not contest the ALJ's findings in these other three areas in her opening brief, and so the Court needs not discuss them. *See Blanford v. Sacramento County*, 405 F.3d 1110, 1114 n.8 (9th Cir. 2005) (arguments not raised in the opening brief are waived).

**MEMORANDUM DECISION AND ORDER - 9**

disability is sufficient. As a board certified pediatrician, Dr. Grossman satisfies the requirements of section 1382c(a)(3)(I). There is no requirement in the regulations that only a psychiatrist can render opinions related to a claimant's mental health limitations. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (finding the lower court's conclusion that there was no psychiatric evidence was based upon an incorrect assumption that such evidence must be offered only by a board-certified psychiatrist). Rather, the ALJ can consult with either a pediatrician or other specialist appropriate to the disability of the individual. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014 (9th Cir. 2003) (ALJ required to make a reasonable effort to obtain a case evaluation, based on the record in its entirety, from either a pediatrician or other appropriate specialist); *Shinn v. Apfel*, No. CIV 1:95-CV-328-D-B, 1998 WL 173223, at *6 (N.D. Miss. Mar. 10, 1998) (rejecting petitioner's argument that Section 1382c(a)(3)(I) required the ALJ to secure a pediatric specialist, instead of a clinical psychologist, to conduct psychological evaluation and testing of the claimant).

However, the Court finds that the ALJ failed to reconcile conflicting evidence that exists in the record when explaining his conclusion that Claimant exhibited a less than marked limitation in adapting or managing herself. "This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in age-appropriate activities and settings. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable performance in community- or school-related

activities; setting goals; making plans independently of others; maintaining personal hygiene; and protecting yourself from harm and exploitation by others." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ failed to consider the record as a whole in making his determination, and instead simply cited a series of exhibits that purportedly support his conclusion. (AR 19.) A review of the records the ALJ cited do not entirely support his conclusion, and the ALJ omitted any discussion of the wider universe of conflicting medical and psychiatric records. For instance, the ALJ relied upon Petitioner's evaluation that Claimant had no problems in the areas of helping herself and taking care of personal needs. (AR 215.) However, this question asked Petitioner whether Claimant could dress herself, wash her hair, eat without assistance, perform household chores, and get to school on time. The ALJ failed to explain how these abilities have any relationship to adapting or managing oneself, which concerns Claimant's ability to regulate her emotions and control her behavior.

Second, the ALJ did not reconcile the conflict between the report from Claimant's second grade teacher on February 25, 2015, with the observations of the IEP team, who conducted a thorough cognitive assessment in 2016 and 2017 and which resulted in an IEP plan finalized on April 25, 2017. For instance, during testing on April 14, 2016, Claimant presented with a flat affect. (AR 315.) In class, Claimant was observed to have difficulty staying awake and had to be redirected multiple times to pay attention. (AR 322.) She also was unable to work independently, needing assistance and prompting from

the teacher. (AR 322 - 23.) Claimant was described also as displaying the following behaviors: "easily over-stimulated, short attention span, lacks self-control, daydreams often, often forgets things, can overreact when faced with a problem, lose her temper often…." (AR 324.) Nor did the ALJ explain how Claimant's improvement in learning correlated to the relevant analysis mandated by the regulations, which requires the ALJ to consider how Claimant regulates emotions and controls her behavior.

The ALJ failed to discuss other evidence in the record concerning Claimant's diagnoses of anxiety, ADHD, and trichotillomania, which appear more relevant to a determination whether Claimant has less than a marked limitation in adapting or managing herself. For instance, treatment records from Idaho Behavioral Health between November 27, 2012, and November 15, 2013, indicate Claimant's anxiety was worse in the evening, and manifested itself in repeated lip licking as well as trichotillomania. (AR 360.) On November 27, 2012, she was noted as having "short patches of hair and long strands of hair," with a disorganized appearance. (AR 367.) At her initial evaluation on December 7, 2012, the clinician noted that, if Claimant did not receive services immediately, she "could potentially need more intensive services put in place to stop the [] self-harming behaviors." (AR 374.)

Claimant resumed mental health treatment on October 16, 2014, when she was noted as exhibiting poor concentration; intense emotions; racing thoughts; panic attacks; hyperactivity; angry outbursts; headaches; fearfulness; and obsessive compulsive behavior. (AR 562.) The clinician recorded Claimant was, at that time, experiencing

severe symptoms of anxiety and social isolation; her trichotillomania symptoms had increased; and her anxiety in crowds had increased significantly. (AR 565.) On November 3, 2014, Petitioner reported Claimant was refusing to ride the bus home from school, because it was crowded, loud and did not have seat belts. (AR 427, 487.) At her 90-day review on January 11, 2015, the clinician noted that intensive skills training had resulted in some improvement, but that Claimant still exhibited difficulty managing her anxiety and using appropriate coping skills to manage her symptoms. (AR 578.)

And, although the ALJ relied upon Dr. Grossman's opinion, it does not appear Dr. Grossman considered all of the relevant evidence in his evaluation. (AR 39.) Dr. Grossman relied primarily upon Claimant's lack of behavior problems at school, such as suspensions. However, this assessment does not take into account Claimant's mental health records, Petitioner's accounts of Claimant's behavior at home, or the observations of the IEP team, who observed Claimant in the classroom.

Finally, Petitioner testified at the hearing Claimant recently began expressing suicidal thoughts, and had just begun counseling again. (AR 54.) Petitioner did not leave Claimant alone at home as a result. (AR 55.) Petitioner testified that, on Claimant's first day of school, Claimant threw up because of her anxiety, and had thrown up on the way to the hearing. (AR 52 – 53.) The ALJ did not discuss this evidence in his analysis of whether Claimant could adequately manage her psychological symptoms.

Although the Court concludes the ALJ did not err in relying upon the testimony of Dr. Grossman, a pediatrician, to fulfill his obligation under Section 1382c(a)(e)(I), the

Court finds that there is not substantial evidence to support the ALJ's finding that

Claimant did not exhibit an extreme limitation in adapting or managing herself.

2.    **Functional Equivalence Finding**

The ALJ determined Claimant had a less than marked limitation in all six

domains, and therefore did not find Claimant disabled through a functional equivalence

analysis. Petitioner argues the ALJ failed to provide a meaningful explanation for his

conclusions that Claimant was less than markedly impaired in the domains of "Acquiring

and Using Information;" "Caring for Yourself;" and "Health and Physical Well-being."[9]

A.    *Acquire and Use Information*

With respect to the first functional domain, "acquiring and using information," the

ALJ found that Claimant has a less than marked limitation, because a teacher

questionnaire indicated no serious problems in acquiring and using information;

Petitioner testified Claimant's current reading level was just above fourth-grade level and

her math ability was below average; Claimant's recent IEP demonstrates Claimant

achieved her IEP goals in reading and math, and her teachers reported improved learning

and focus; and Dr. Grossman opined that Claimant has a less than marked limitation in

this domain. (AR 24.) The ALJ gave Dr. Grossman's opinion more weight when

considering this functional domain, citing it as more persuasive than Claimant's school

---

[9] Petitioner asserts also that it was error for the ALJ to have relied upon Dr. Grossman, because he was not trained in psychology. As discussed in the preceding section, the ALJ may rely upon either a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the child's disability. The ALJ must still meet the substantial evidence standard, however.

records. (AR 22.)

In determining whether a child between the ages of six and twelve is limited in her ability to acquire and use information, the Commissioner is to consider whether the child is learning to "read, write, and do math, and discuss history and science." *See* 20 C.F.R. § 416.926a(g)(2)(iv). A child should be able to use these skills in "academic situations to demonstrate what [she has] learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions." 20 C.F.R. § 416.926a(g)(2)(iv). Examples of limited functioning in this domain include difficulty solving mathematics questions, or difficulty explaining what you mean. 20 C.F.R. § 416.92a(g)(3).

The ALJ's conclusion that Claimant's ability to acquire and use information is less than marked finds some support in Claimant's school records, notably her April 2017 IEP evaluation which shows that, despite struggling in reading and math, she made steady progress in these subject areas and met her IEP goals. (AR 327 – 345.)

However, the ALJ's discussion of Claimant's ability to acquire and use information was too cursory. It does not appear that the ALJ considered the effect of Claimant's highly structured and supported educational environment on her learning disability symptoms, or assessed its effect on her academic progress. For instance, Claimant's 2017 IEP evaluation noted Claimant "needs specially designed instruction" in math, including "small group instruction," and that Claimant "quickly falls behind when accessing the general education curriculum," which will be "increasingly difficult as the

curriculum becomes more complex." (AR 336 – 337.) With respect to reading, Claimant

"misses important information" encountered in grade level text, and falls "behind peers in

reading fluency…this affects every area of her academics." (AR 335.) Claimant was

noted to need "specially designed instruction in a small group setting to teach her reading

strategies she needs to be successful in the general education classroom." (*Id.*)

The ALJ made no mention of these narrative assessments, and instead focused on

the fact that Claimant continues to learn, without comparing her progress with what is

expected of a child her age, or grade level. However, "good performance in a special

education setting does not mean that [a child is] functioning at the same level as other

children [her] age who do not have impairments." *F.M. v. Astrue*, 2009 WL 2242134, at

*9 (E.D.N.Y. 2009) (holding that the claimant was "the beneficiary of the devoted efforts

of teachers," but that fact was insufficient to support a finding that his limitations were

not marked) (citing 20 C.F.R. 416.924a(b)(7)(iv))[10].

There is evidence in the record, not discussed or reconciled by the ALJ, that

Claimant's performance in the core subjects of reading, writing and math is significantly

below grade level and well below average. For instance, the Woodcock-Johnson IV

test,[11] administered in April of 2016, reflected Claimant scored 68 on the auditory

processing cluster, which is well below average and reflects her ability to encode,

---

[10] Under 20 C.F.R. § 416.924a(b)(7)(iv), the Commissioner is required to consider special education or accommodations received in the school setting because of a claimant's impairments.

[11] The Woodcock-Johnson Test of Cognitive Abilities assesses various processing areas important to academic achievement. (AR 315.)

synthesize and discriminate auditory stimuli. (AR 316, 318.) Her phonological processing subtest, which tests word access, word fluency, and substitution, was also a score of 68, and in the 2nd percentile, reflecting an "Extremely Below Average" score. (AR 318.) These tests scores are well below average and two standard deviations below the mean. (AR 315.)[12] The ALJ does not discuss whether this evidence constitutes sufficient evidence of performance at least two standard deviations below the mean, which would be indicative of a "marked" impairment. *See* 20 C.F.R. 416.926a(e)(2) ("[A] 'marked' limitation also means...[a] valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score"). And Dr. Grossman testified at the hearing that he did not know "where we would put [these scores] in our assessment." (AR 44 – 45.)

Claimant's Woodcock-Johnson IV scores in tests designed to evaluate her reading and math abilities are generally in the below average to low average range. (AR 319 – 321.) Despite her generally average scores in reading and math, Claimant's IEP team noted she needs "many accommodations in the classroom in reading and math contrary to her average scores...." (AR 325.) Yet, despite this assessment, Dr. Grossman opined

---

[12] According to the Standard Scores chart, an average score is 100. Scores of 70 or below are deemed "markedly insufficient," while scores between 70-79, reflecting "well below average" scores, are deemed "insufficient." (AR 315.) Most students score between 85 and 115. (AR 315.)

Claimant's percentile scores are "healthy," and did not consider the contrary evidence reflected in the IEP evaluation summary itself. (AR 43.)

Absent a thorough discussion of the conflicting evidence by the ALJ, the Court is unable to conclude that the ALJ's finding that Claimant is less than "markedly limited" in the area of "acquiring and using information" is supported by substantial evidence.

**B.** *Caring for Yourself*

This domain considers how well a child maintains a healthy emotional and physical state, including how well she gets her physical and emotional wants and needs met in appropriate ways; how she copes with stress and changes in her environment; and whether she takes care of her own health, possessions, and living area. 20 C.F.R. § 416.926a(k). Examples of limitations in this domain include "placing non-nutritive or inedible objects" in your mouth; engaging in self-injurious behavior, such as suicidal thoughts; disturbance in eating or sleeping patterns; and failing to spontaneously pursue enjoyable activities or interests. 20 C.F.R. § 416.926a(k)(3)(i), (iv), (v), (vi).

With respect to the domain of caring for yourself, the ALJ found Claimant to be less than markedly limited. The ALJ cited the function reports completed by Petitioner and by Claimant's teacher, which indicated "no limitations" in this domain; objective medical evidence showing appropriate grooming and hygiene despite a history of trichotillomania; and Dr. Grossman's opinion that Claimant has a less than marked limitation in this domain. (AR 27.)

Again, the ALJ's discussion of Claimant's ability to care for herself fails to

reconcile other evidence in the record demonstrating significant difficulties in this area. For instance, Petitioner testified that, at the time of the hearing, Claimant (who was then ten years of age) was expressing suicidal thoughts and that she had been seeing a counselor for the past month. (AR 54.)[13] Petitioner testified also that, because of her suicidal ideations, Claimant could not be left alone at home. (AR 55.) Suicidal thoughts are listed specifically as one example of a limitation in this domain, yet the ALJ failed to discuss the impact of this evidence upon his determination.

The ALJ did not explain why reports of Claimant's appropriate grooming and hygiene were somehow inconsistent with her diagnosis of trichotillomania, which manifests itself in Claimant pulling out her hair and eating it. At an office visit dated June 12, 2013, it was noted that x-rays showed an intestinal blockage suspected to be hair. (AR 552.) Claimant continued to pull and eat her hair, as reflected in office visit notes dated October 16, 2014. (AR 560 – 565.) One can be appropriately groomed, yet still engage in destructive behaviors. Placing non-nutritive objects (such as hair) in one's mouth is listed as indicative of an inability to appropriately care for oneself, which the ALJ did not discuss in his determination.

Nor did the ALJ reconcile the functional report completed in 2015 by Claimant's second grade teacher with reports of her inability to manage stress, falling asleep in the classroom, and her counseling and other records showing an inability to manage anxiety

---

[13] Claimant's recent counseling records are not part of the Administrative Record. The ALJ did not request them, and Petitioner did not request that the record be held open so she could submit them for consideration.

**MEMORANDUM DECISION AND ORDER - 19**

at home. (AR 562 – 579, 374 - 401.) It is true that Claimant's second grade teacher did not note any functional limitations in the category of caring for oneself while at school. (AR 238.) However, Petitioner reported in 2014 that at home, Claimant threw tantrums lasting for hours consisting of kicking, screaming and crying. (AR 396, 400.) Petitioner reported in May of 2016 to the school IEP team that, at home, Claimant often became over stimulated, would lose her temper, engaged in impulsive behaviors, and required a lot of parental attention. (AR 324.) Classroom observation dated April of 2016 noted Claimant had difficulty staying awake, and had to be redirected multiple times to pay attention. (AR 322.) Claimant's teacher reported also that Claimant acted tired and groggy in the morning. (AR 325.) These observations suggest problems with Claimant's ability to manage stress and anxiety appropriately, as well as with Claimant's sleep patterns.

As with the prior domain, without a discussion of this conflicting evidence by the ALJ, the Court is unable to conclude that the ALJ's finding that Claimant is less than markedly limited in the area of "caring for yourself" is supported by substantial evidence.

### C.   *Health and Physical Well-being*

In this domain, consideration is given to the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on functioning that was not considered under the domain of mobility. 20 C.F.R. § 416.926a(l). For instance, a physical or mental disorder may have physical effects that vary in kind and intensity; medications may have physical effects limiting performance;

and an illness may be chronic with stable symptoms, or episodic with periods of worsening and improvement. 20 C.F.R. § 416.926a(l)(1) – (3). Examples of limitations in this domain include generalized symptoms such as weakness, dizziness, agitation, lethargy, or psychomotor retardation; and somatic complaints, such as headaches, recurrent infections, changes in weight or eating habits, stomach discomfort, or nausea. 20 C.F.R. § 416.926a(l)(4)(i), (ii).

The ALJ considered Claimant to have a less than marked limitation in this domain, because recent records did not indicate a diagnosis for Claimant's abdominal complaints or persistent abdominal complaints; the frequency and severity of her migraine headaches had improved; her teacher did not report specific limitations in this domain; Claimant experienced no emergency treatment or impatient hospitalizations; and Dr. Grossman was of the opinion Claimant has a less than marked limitation in this domain. Yet, the ALJ notes also that Petitioner testified Claimant's older siblings supervise her at home.

The regulations consider a requirement for 24-hour-a-day supervision for medical (including psychological) reasons as an impairment or limitation that functionally equals a listing. 20 C.F.R. § 416.926a(m)(4). The ALJ's written determination noted that Claimant, at the time of the hearing, was supervised at home and presumably at school by teachers. These facts potentially meet the level of supervision found to equal a listing, yet the ALJ failed to discuss why he did not find such evidence either persuasive or credible, or why the evidence did not meet the standard set forth in the regulations.

The ALJ also failed to reconcile Dr. Grossman's testimony regarding the effect of

Claimant's multiple medications, a factor the ALJ must consider, with his seemingly inconsistent opinion Claimant had less than marked limitations in this domain. For instance, Dr. Grossman testified "because she's on so much daily medication,[14] and because she does have the headaches and abdominal pain, that would be a less than marked limitation" in the domain of health and physical well-being. (AR 41.) It is unclear how Dr. Grossman arrived at his conclusion of a less than marked limitation, yet at the same time acknowledged Claimant's "unusual number of medications for a child" to manage "both the migraine and the anxiety" symptoms. (AR 41.) Also, Dr. Grossman qualified his opinion in this area, disclaiming any expertise in psychology. (AR 42.) Given Claimant's history of anxiety manifesting itself in trichotillomania, and Dr. Grossman's admission that he did not thoroughly analyze the psychological issues, Dr. Grossman's opinion is not supported or adequately explained.

The ALJ cites to treatment records allegedly noting an improvement in the severity and frequency of Claimant's migraine headaches with associated abdominal pain. (AR 21, 28, 474.) Office treatment notes dated April 4, 2017, from Dr. Timothy Herndon, indicate Claimant suffered from such headaches weekly and that symptoms lasted one day. (AR 474.) No mention is made, however, how much Claimant's symptoms had improved. Weekly headaches lasting one day could cause Claimant to miss school more than twice a month. There is no quantification of this statement in the

_____

[14] Medical records indicate Claimant is prescribed Clonidine Hydrochloride; Topiramate; Zoloft; and Adderall. (AR 492.)

medical records.

The ALJ stated also that there is no diagnosis attached to Claimant's abdominal complaints. However, treatment records dated March 7, 2014, from Dr. Tyler Burpee, a specialist in gastroenterology, indicate that, in his opinion, Claimant suffers from "abdominal migraines,[15] with intermittent generalized abdominal pain and associated nausea, pallor, and vomiting." (AR 433.) At that time, it was noted symptoms of headache and body ache were occurring four days per week, while abdominal pain was occurring 2-3 days per week. (AR 433.) A milk allergy was confirmed at that time as well as a lack of weight gain over the prior year.

Despite treating her abdominal symptoms by removing dairy, Petitioner reported to Dr. Burpee at Claimant's July 25, 2014 follow up visit that Claimant was still having 2-3 weekly episodes of abdominal pain and vomiting, which mostly happened at night. (AR 436.) Vomiting was "forceful…nonbloody and nonbilious." (AR 436.) Dr. Burpee suspected delayed gastric emptying or constipation could be causes. (AR 437.) Tests revealed mild delayed gastric emptying. (AR 439.) Petitioner continued to seek treatment for Claimant's vomiting and abdominal pain. (treatment notes, October 14, 2014, AR 529.)

---

[15] Abdominal migraine is a "disorder that causes intermittent abdominal pain and is believed to be related to migraine; abdominal migraine has some of the features of migraine, e.g., there may be a strong family history of migraine headaches, and the condition may be relieved by sleep; however, a headache may not be present. The diagnosis depends on excluding other causes of abdominal pain. 554090 abdominal migraine, STEDMANS MEDICAL DICTIONARY 554090.

There is no discussion in the ALJ's written determination concerning Claimant's frequent office visits throughout 2015 and 2016 for rash and upper respiratory infection symptoms. Claimant complained of upper respiratory symptoms with a positive strep test on December 17, 2015. (AR 510 – 513.) Symptoms failed to improve, with Claimant seeking follow up care on January 11, 2016, February 22, 2016; and February 29, 2016. (AR 500, 503, 507, 510.) She again developed a cough, pharyngitis, rash, and nausea and vomiting on September 26, 2016. (AR 496.)

It is unclear how a lack of emergency room treatment or inpatient hospitalizations due to Claimant's impairments negates the above evidence in the record. According to the regulations, this is not the standard. Further, an evaluation dated October 16, 2014, noted Claimant did not meet the eligibility criteria for inpatient care. (AR 564.) Rather, the ALJ must consider generalized symptoms and somatic complaints, such as headaches, recurrent infections, changes in weight or eating habits, or stomach discomfort, for which Claimant sought treatment. The ALJ's cursory dismissal of the conflicting evidence in the record does not indicate he considered the above evidence relating to Claimant's health and well-being.

The Court concludes the ALJ failed to sufficiently assess or credit the evidence in the record with respect to three of the pertinent domains of functioning. Given the brevity of the analyses of these domains, and the existence of conflicting evidence in the record that is not discussed in the ALJ's determination, it is not possible for the Court to find that the ALJ's conclusions are supported by substantial evidence. "[I]n reviewing an

administrative agency's decision, a court should not be compelled to guess at the theory underlying the agency's action." *Berry v. Schweiker*, 675 F.2d 464, 469 n.3 (2d Cir. 1982) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196–197 (1947)); *see also Humane Soc. of U.S. v. Locke*, 626 F.3d 1040, 1048 (9th Cir. 2010) ("reviewing court should not attempt itself to make up for [an agency's deficiencies….") (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

Where, as here, there are sufficient unanswered questions in the record and the ALJ's rationale is unclear, the matter must be remanded for further findings and detailed explanation. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000). Moreover, this is not a case where there is no need to develop the record or convene further administrative proceedings, as the existing record does not contain persuasive proof of disability, and Petitioner has not advocated for application of the "credit-as-true" rule. *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014); *see also Martinez v. Commissioner*, 262 F.Supp.2d 40, 49 (W.D.N.Y. 2003).

### 3.     Petitioner's Testimony

During the hearing before the ALJ, Petitioner testified that Claimant required special education services at school, where she had just begun the fifth grade and she was reading below grade level,[16] which in turn affected her ability to learn the material in other classes. (AR 49.) Petitioner testified that Claimant had difficulty functioning in a

---

[16] Petitioner indicated Claimant was reading at a fourth grade level.

mainstream classroom, and required one-on-one instruction. (AR 50.) She testified Claimant struggles with completing chores, homework, and other assigned tasks without becoming overwhelmed. (AR 51.) With regard to physical symptoms, Petitioner testified Claimant suffers from stomach migraines and migraine headaches accompanied by vomiting and diarrhea, with symptoms lasting up to 72 hours. (AR 52.) On the first day of fifth grade, Petitioner testified Claimant vomited because of her anxiety. (AR 53.) Petitioner testified Claimant interacts with one friend at a time, and will become attached to the one friend to the exclusion of others. (AR 53.) If her friend is in a group, Claimant will remain by herself. (AR 54.)

Petitioner testified also that Claimant recently began expressing suicidal thoughts, and had begun counseling approximately one month prior to the hearing date. (AR 54.) Because of Petitioner's suicidal ideation and anxiety, Petitioner testified she does not leave Claimant alone at home and has Claimant's older siblings supervise her. (AR 55.) Claimant also has difficulty sleeping and adjusting to the school year. (AR 57 – 58.)

In the ALJL's discussion, he gave Petitioner's opinions, as expressed in Exhibit 1E, "only some weight." (AR 22.) In doing so, the ALJ discounted Petitioner's testimony on the grounds that: (1) Petitioner is not medically trained; (2) Petitioner's maternal relationship colored her perceptions; and (3) Petitioner's statements were "not consistent with the preponderance of the opinions, education records and medical evidence of record." Petitioner contends the ALJ failed to support his conclusory statement that Petitioner's testimony is not consistent with the opinions, education records and medical

evidence of record with any meaningful discussion of that evidence.

The testimony of lay witnesses, including family members, about their own observations regarding the claimant's impairments constitutes competent evidence that must be considered and evaluated by the Commissioner in the disability evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Such testimony cannot be discounted unless the ALJ gives reasons that are germane to that witness.[17] *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Stout v. Comm'r*, 454 F.3d at 1053 (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis*, 236 F.3d at 511–12.

Where the claimant is a child who is unable to adequately describe her symptoms, the Commissioner accepts the testimony of a person most familiar with the child's condition, such as a parent. 20 C.F.R. § 416.928(a); *Smith ex rel. Enge v. Massanari*, 139 F.Supp.2d at 1134. In such circumstances, the testimony of parents is a particularly valuable source of information in the evaluation because they usually observe and

---

[17] Petitioner argues the correct legal standard for evaluation of Petitioner's testimony is the "clear and convincing" credibility standard adopted by the Court of Appeals for the Tenth Circuit in *Briggs v. Massanari*, 248 F.3d 1235 (10th Cir. 2001). However, the Court of Appeals for the Ninth Circuit has clearly held that testimony by third parties, including parents of child claimants, is evaluated under the standard applicable to lay witnesses. *Buckley v. Astrue*, No. EDCV 08-1523 CW, 2009 WL 3739451, at *3 (C.D. Cal. Nov. 3, 2009) (citing *Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1086 (9th Cir. 2000); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Smith ex rel. Enge v. Massanari*, 139 F.Supp.2d 1128, 1134 (C.D. Cal. Apr. 30, 2001)).

interact wiht the child every day. 20 C.F.R. § 416.924a(a)(2)(i).

In rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512). However, "where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F3d 1050, 1056 (9th Cir. 2006).

The first two reasons given by the ALJ are not acceptable reasons for rejecting lay witness testimony. Neither lack of medical training, an assumed financial interest in a favorable adjudication, nor a familial interest constitutes a germane reason for rejecting lay testimony. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (A lay person, though not a vocational or medical expert, was not disqualified from rendering an opinion); *Gutierrez v. Colvin*, 208 F.Supp.3d 1117, 1124-25 (E.D. Cal. Sept. 26, 2016) (finding regulations specifically require consideration of "non-medical" sources, and rejecting supposed financial interest in a favorable adjudication and family bias as germane reasons for discrediting lay testimony), *cited in Sanderson v. Berryhill*, No. 1:16-CV-00242-CWD, 2017 WL 3974235, at *8 (D. Idaho Sept. 8, 2017).

The ALJ's third reason, inconsistency with medical evidence, is considered a germane reason for rejecting lay witness testimony. *Lewis*, 236 F.3d at 511. However, a review of the Function Report the ALJ relied upon does not support his conclusion, and it does not appear the ALJ considered Petitioner's hearing testimony at all.

The Function Report Petitioner completed is dated January 22, 2015. (AR 212.) Upon review of the 2015 Function Report, Petitioner indicates Claimant's ability to progress in learning is limited, because she cannot read and understand stories in books and magazines. (AR 212.) This is consistent with Claimant's standardized test results, and the observations of her IEP team, discussed above, documenting Claimant's low average abilities in reading and reading comprehension. Similarly, Petitioner indicates Claimant has difficulty finishing things she starts. (AR 216). This is consistent with the supervision and individual instruction Claimant receives in school as a result of her IEP plan. In this regard, the ALJ's discussion of how or why Petitioner's observations of her daughter are inconsistent with the "preponderance of the opinions, education records and medical evidence of record," is lacking when the Court's review indicates otherwise. Nor did the ALJ discuss Petitioner's hearing testimony.

Accordingly, the Court finds the ALJ's assessment of Petitioner's testimony is not supported by substantial evidence. The Court cannot confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.

## CONCLUSION

The Court finds the ALJ erred in his assessment of three domains of functioning, and in his assessment of Petitioner's testimony. Remand is required so that the Commissioner can apply the proper legal standards in weighing the evidence of record, reconcile any conflicting evidence or explain his reasons for rejecting such evidence, and set forth his findings and reasoning in greater detail.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)  Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)  This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)  This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: March 13, 2020

Honorable Candy W. Dale
United States Magistrate Judge